FILED

2008 Jan-29  PM 05:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| **DANNY MITCHUM and DANA MTICHUM,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **6:07-cv-112-UWC** |
| | ) | |
| **THE PITTSBURGH & MIDWAY COAL MINING COMPANY, INCORPORATED,** | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION**

Defendant The Pittsburgh & Midway Coal Mining Company, Incorporated ("P&M") seeks to exclude the opinions of the expert witness hired by Plaintiffs, Danny and Dana Mitchum ("Plaintiffs"), and seeks summary judgment [1] on the property damage claims asserted by Plaintiffs arising from P&M's coal mining operations, pursuant to the Alabama Surface Mining Act, § 9-16-91(e). Ala. Code § 9-16-91(e).

For the reasons set forth below, the Court finds and concludes that the opinions

---

[1] *See* Docs. 30, 35.

and report of the Plaintiffs' expert do not run afoul of *Daubert v. Merrill Dow Pharmaceuticals, Incorporated.,* 509 U.S. 579 (1993) and *Kumho Tire Company v. Carmichael,* 526 U.S. 137 (1999).   Moreover, the Court finds and concludes that based on the undisputed facts construed in a light most favorable to Plaintiffs, Defendant is not entitled to summary judgment.

## I. The Undisputed Facts

Plaintiffs' home is located on land in the coal-rich region of northwest Alabama, which includes Fayette County.  Plaintiffs own the surface rights to the land, and P&M owns the subsurface or mineral rights to the same property.

The property has been in the Mitchum family for generations.  (Doc. 34, Pls.' Ex. 11, Danny Mitchum ("Danny") Dep. at 91.)  Between 2003 and 2004, Plaintiffs constructed their home on the property.

In 1991, at a cost of nearly $12,000, Plaintiffs built a fish pond on the property, which was fed by an artesian spring.  (*Id.* at 18, 110-14.)  The pond had a depth somewhere between ten and twelve feet.  (*Id.* at 112.)  There was also a drilled well on the property, which at times furnished the drinking water for the Plaintiffs' home and pets.  (*Id.* at 53, 55, 158.)  Additionally, the property contains a metal tractor shed and a boat shed.  (*Id.* at 116-18.)  The boat shed cost roughly $7,000.  (*Id.* at 199-

120.)

Between December 2005 and April 2007, P&M exercised its rights under Alabama law and mined the coal under the home of the Plaintiffs. In this operation, P&M used the "longwall" method of mining, which results in planned subsidence of the surface land above the mined areas.

P& M's mining operations damaged Plaintiffs' property in several ways. Large cracks emerged in the yard – to the extent that it was dangerous for the Plaintiffs' young son to walk or ride his bicycle near the home. (Doc. 34, Pls.' Ex. 11, Danny at 139; Ex. 10, Dana Mitchum ("Dana") Dep. at 23.) These cracks spread to the rest of the property. (Doc. 34, Ex. 11, Danny at 139-41.)

The home was damaged substantially and the damage is continuing.[2] (*Id.* at

---

[2]    A.    Our house is - -  you know, our house has new damage  - -  well it's ongoing.  I mean, different stuff is happening everyday to it.

                      . . . .

The brick and stuff started separating from the wall. The doors was dropping and started having enormous amount of cracks in our sheetrock and our title and the sun deck out back started sinking. And it's still sinking.

                      . . . .

The sun deck when I put  - -  you know, I told you when you were there I put silicone on it the day before.

Q.    Right.

A.    It's done dropped another inch since then.  And that's the sun deck that's

100.)

The concrete floor of Plaintiffs' tractor shed and boat shed were damaged, as well as the door and the driveway leading up to them. The tractor had to be moved out of its shed. (*Id*. at 139.)

Plaintiffs' well was damaged to the extent that it could no longer be used. The water from it could no longer be used as drinking water, since it smelled like sulphur and tasted "awful." After the mining operation had ceased, the pump was pulled and the well was abandoned. (*Id*. at 158.)

The mining operations destroyed the artesian spring, with resulting ruination of the fish pond. (*Id*. at 110-14.) The fish pond has a large crack in it, and the water reaches not more than two or three feet. (*Id.* at 112.)

On July 10, 2007, P&M's appraiser valued Plaintiffs' property at $225,000 ($165,000 for the house and site improvements, $60,000 for the land). (Doc. 31,

---

on the back of the house. And the steps is separated from the threshold about a half an inch more. But that's pretty much - - I mean, it started at the fish pond first, the area there. Then around my tractor shed cracks. And then proceeded up the hill to the home.

And we noticed that we had a large crack in front of the door on our porch. Then we started having cracks all around the porch. And then, like I said, inside the house with the tile, sheetrock, sun deck out back, doors that was lower on one end than on the opposite side. . . .  I mean, that's just how it worked.

(Doc. 34, Pls.' Ex. 11, Danny at 100, 140-41.)

Def.'s Ex. 2.)

Also in July 200, P&M solicited a proposal from Cornerstone Contracting Services ("CCS") for the structural repair of the Plaintiffs' home. For a price of $39,730 (which by its terms did not include labor or materials) [3] CCS proposed to repair the porch;  jack-hammer the damaged concrete and re-pour portions of the driveway and garage, as well as one of the sheds; repair the vinyl siding and sheet rock cracks;  repair and re-blow the ceilings; re-set the doors in two bedrooms; remove broken ceramic titles and replaces them as well as the marble threshold in the master bedroom doorway; and remove brick along the right side of the garage wainscot and relay.  (Doc. 31, Def.'s Ex. 3.)  The quoted price did not include the "cost of unforeseen problems not noted" in the proposal.  (*Id.*)

P&M thereafter sent Plaintiffs a check in the amount of $39,730.  Plaintiffs declined the offer.

For purposes of the summary judgment motion, the cost of repairing the Plaintiffs' residence is $76,402.44.  (Doc. 34, Pls.' Ex. 1.)

Defendant has not provided evidence of the costs of restoring the Plaintiffs' yard to its previous condition, replacing the artesian spring, restoring the well which furnished drinking water, repairing the fish pond, or repairing the boat shed.

---

[3]*See* Doc. 31, Def.'s Ex. 3 at 2.

S. Lee Pake is the Plaintiffs' designated diminution expert. He is a graduate of the University of Alabama. He has taken several courses in real estate and real estate appraisals. He is certified by the State of Alabama as a General Real Property appraiser. His clients include Regions Bank, Colonial Bank, Compass Bank, Tuscaloosa County, the City of Tuscaloosa, and General Motors.

It is Pake's opinion that the value of Plaintiffs' residence is $250,000. Taking into consideration the $76,402.44 cost to repair the property due to the mining damage, in Pake's opinion the current market value of the property is $174,000.[4]

## II. The Controlling Law

The Alabama Surface Mining and Reclamation Act provides, in relevant part:

(e)     Underground coal mining operations conducted after July 1, 1998 shall comply with the following requirements:

---

[4] It is apparent that at earlier points in time with incomplete information, Pake gave different "broker's opinions" on the market value of the property. But that consideration goes to the weight, rather than the admissibility, of his present opinion and expert report. As a certified appraiser, he submitted a report (which does not refer to a "broker's" opinion) in a form substantially the same as P&M's expert report.

The Court finds that: 1) Pake is qualified to testify to the value of real estate in the Tuscaloosa-Fayette County area; 2) his methodology is substantially similar to that of the Defendant's expert, and, in any event, is sufficiently reliable, and 3) his testimony will assist the jury in determining the appropriate current valuation of Plaintiffs' property. *See Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999).

The Motion to Exclude is thus due to be denied.

(1) Promptly repair or compensate for material damage to any occupied <u>residential dwelling and related structures</u> or any noncommercial building caused by surface  subsidence resulting from underground coal mining operations. Repair of damage shall include rehabilitation, restoration, or replacement of damaged occupied residential dwelling and related structures or noncommercial building. Compensation shall be provided to the owner of the damaged occupied residential dwelling and related structures or noncommericial building which shall be in the full amount of the diminution in value resulting from subsidence caused damage. . . .

(2) Promptly <u>replace any drinking, domestic, or residential water supply from a well or spring</u> in existence prior to the application for a surface mining and reclamation permit, which has been affected by contamination, diminution, or interruption resulting from underground coal mining operations.

(3) Promptly <u>correct any material damage resulting from subsidence caused to surface lands,</u> to the extent technologically and economically feasible, by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses that it was capable of supporting before subsidence.

Ala. Code § 9-16-91 (emphasis added).

"There is no requirement under Alabama law that a plaintiff proffer expert testimony to establish the fair market value of his or her real property." *Fisher v. CIBA Speciality Chem. Corp*., No. 03-0566-WS-B,  2007 WL 2995525, at * 7 (Oct. 11, 2007) (citing *Baldwin v. McClendon,* 288 So. 2d 761, 768 (Ala. 1974); *Alabama Power Company v. Cummings,* 466 So. 2d 99, 102-03 (Ala. 1985)). "Simply put, 'a landowner can testify as to the value of his property, even if he is not an expert.'"

*Fisher*, 2007 WL 2995525, at * 7 (citation omitted).

### III. Analysis

The undisputed facts and the controlling law make it clear that P&M is not entitled to summary judgment.

Quite the contrary, the undisputed facts compel the conclusion that P& M has not promptly repaired, compensated, or offered to fully repair or compensate the Plaintiffs for material damage to their home, sheds, and fish pond caused by the its surface subsidence resulting form underground coal mining operations.

Further, the undisputed facts clearly show that P&M has not promptly replaced, or offered to replace, Plaintiffs' drinking, domestic, or residential water supply from the well and artesian spring in existence prior to P&M's underground coal mining operations on their property.

Moreover, the undisputed facts establish that P&M has made no effort to promptly correct the material damage to Plaintiffs' yard and the rest of their property by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses that it was capable of supporting before subsistence.

Under these circumstances, if anyone is entitled to summary judgment on the liability issues, it is certainly not P&M.

**Conclusion**

By separate order, P&M's Motion for Summary Judgment and its Motion to Exclude will be denied.


Done this 29th day of January, 2008.


U.W. Clemon<br>
United States District Judge